**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JAY JURDI, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 18-1892 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 13, 18, 22 |
| | : | | |
| UNITED STATES OF AMERICA, | : | | |
| | : | | |
| Defendant. | : | | |

<u>**MEMORANDUM OPINION**</u>

GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION TO TREAT
ALLEGATIONS AS ADMITTED

## I. INTRODUCTION

In this case, brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552,

*pro se* Plaintiff Jay Jurdi seeks to obtain records from the Federal Bureau of Investigation

("FBI") and the Drug Enforcement Agency ("DEA") relating to Anthony Grasso, a man who

testified at Jurdi's criminal trial.  Defendant, the United States, has now moved for summary

judgment on behalf of both agencies, arguing that the FBI properly refused to disclose the

existence or non-existence of responsive records (a so-called "*Glomar* response") due to certain

privacy and law enforcement-related FOIA exemptions, and that the DEA properly asserted a

categorical denial of the request based on similar exemptions.  Jurdi also cross-moves for

summary judgment.  Ultimately, because the Court finds that the FBI's *Glomar* response and the

DEA's categorical denial were justified, the Court will grant the government's motion for

summary judgment and deny Jurdi's cross-motion for summary judgment.

Also pending before the Court is a related motion by Jurdi, which requests that the Court

either (1) treat certain allegations advanced in his complaint as admitted or (2) strike some of the

government's responses to the statement of undisputed material facts accompanying his cross-motion for summary judgment.  For the reasons explained below, the Court will deny the motion.

## II.  BACKGROUND

According to the complaint, in 2012, Jay Jurdi, along with various other co-conspirators, was charged with "conspiracy to possess with intent to manufacture and distribute methamphetamine."  Compl. at 1, ECF No. 1.  One of the other defendants charged was Anthony Grasso.  *Id.* at 1–2.  Pursuant to a plea agreement, Grasso testified against Jurdi at a trial on October 14, 2014.  *Id.* at 2.  At trial, Grasso testified that he had been cooperating with the government and had arranged a drug deal to facilitate the arrest of some individuals.  *Id.*; *see also* Compl. Ex. 1 at 69, ECF No. 1-1 (trial transcript).[1]  Public records indicate that Jurdi was subsequently convicted.  *See* Jury Verdict, *United States v. Grasso et al.*, No. 4:12-cr-180 (E.D. Tex.), ECF No. 432.[2]

On March 22, 2018, Jurdi sent the DEA a FOIA request for (1) "[a]ny DEA Form 6's[3] created by any DEA Agents in relation to Anthony Grasso," (2) "[a]ny Other File Number of a DEA File containing the name of Anthony Grasso," and (3) "[a]ny other investigative reports filed by any other agent referencing the name Anthony Grasso."  Compl. Ex. 1 at 93 (DEA request).  On March 25, 2018, Jurdi sent a nearly identical request to the DEA and FBI, this time

---

[1] Because the documents included in Exhibit 1 are not consistently identified or paginated, the Court will refer to the automatically-generated ECF page numbers.

[2] "The court may take judicial notice of another court's proceedings."  *Donelson v. U.S. Bureau of Prisons*, 82 F. Supp. 3d 367, 371 (D.D.C. 2015) (citations omitted).

[3] "DEA Form 6 & 6a are 'report of investigation forms' used by the DEA to memorialize investigation and intelligence activities, and information."  *Cobar v. U.S. Dep't of Justice*, 81 F. Supp. 3d 64, 74 (D.D.C. 2015) (some internal quotations omitted).  For example, "[i]f a DEA Special Agent or task force officer acting under the DEA's authority conducted a debriefing, this event would be memorialized in a DEA Form–6."  *Jones v. DEA*, 83 F. Supp. 3d 380, 382 (D.D.C. 2015) (internal quotations omitted).

seeking "[a]ny FBI Form 302's[4] created by any FBI agents in relation to Anthony Grasso," as well as any file numbers and investigative reports referencing Mr. Grasso.  *Id.* at 94 (FBI request).  On April 10 and 11, 2018, the agencies each responded separately to Jurdi's requests, both stating that they could "neither confirm nor deny the existence of such records pursuant to Exceptions 6 & 7(C) of FOIA."  *Id.* at 95 (DEA denial); *id.* at 97 (FBI denial).  On April 17, 2018, Jurdi appealed both decisions to the Department of Justice's Office of Information Policy.  *Id.* at 99 (FBI appeal); *id.* at 102 (DEA appeal).  On May 31, 2018, both appeals were denied, with OIP upholding use of both agencies' *Glomar* responses under Exceptions 6 & 7(C).  *See id.* at 105 ("Confirming or denying the existence of such records, including law enforcement records, concerning a third-party individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy."); *see also id.* at 107 (same as to DEA).[5]

On July 8, Jurdi filed this action, seeking to compel release of the records.  Compl. at 9. That filing provoked a response from one of the agencies: after reviewing the complaint and Grasso's trial testimony, the DEA "abandoned its former application of *Glomar* in a letter to Plaintiff."  Def.'s Mot. for Summ. J. Ex. B ("Hertel Decl.") ¶ 12, ECF No. 13-4.  In the letter, the DEA "confirm[ed] that records exist," but determined that "without consent, proof of death or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *Id.* (quoting

---

[4] The FBI uses Form 302 "to summarize facts and statements made by potential witnesses during interviews."  *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 391 F. Supp. 3d 43, 48 (D.D.C. 2019) (citation omitted).

[5] The FBI's denial also included an advisement that, "per standard FBI practice and pursuant to FOIA exemption b(7)(E) . . . this response neither confirms nor denies the existence of an individual's name on any watch lists."  Compl. Ex. 1 at 97.

Hertel Decl. Ex. 1 ("DEA Letter"), ECF No. 13-5).  Therefore, the DEA concluded, it was "not required to conduct a search for the required records."  *Id.* (quoting DEA Letter).

Relatively soon thereafter, the government filed a motion for summary judgment,[6] arguing that the FBI had properly asserted a *Glomar* response and the DEA properly relied on a categorical denial.  *See* Mem. in Supp. Def.'s Mot. for Summ. J. ("MSJ") at 1, ECF No. 13-1. Jurdi responded with a combined memorandum in opposition and cross-motion for summary judgment, largely arguing that, because at least some of the information regarding Mr. Grasso was already in the public realm, neither agency could rely on broad denials.  *See* Pl.'s Opp'n to Def.'s MSJ & Pl.'s Cross-Mot. for Summ. J. ("XMSJ") at 1–2, ECF No. 17.[7]  The summary judgment motions are now fully briefed and ripe for the Court's consideration.  *See* Def.'s Reply in Supp. of MSJ & Opp'n to XMSJ, ECF No. 21; Pl.'s Reply in Supp. of XMSJ, ECF No. 23.[8]

Separately, in the midst of this briefing, Jurdi filed a related procedural motion.  *See* Pl.'s Mot. to Treat his Allegations as Admitted and/or to Strike Def.'s Responses to Pl.'s Statement of Undisputed Material Facts ("Allegations Mot."), ECF No. 22.  In this motion, Jurdi argues (1)

---

[6] "[I]t is standard practice in FOIA cases for the defendant to file a motion for summary judgment instead of filing a responsive pleading.  Such a practice is substantively no different than filing a motion under Rule 12(b)(6) accompanied by matters outside the pleadings, which is then converted by operation of Rule 12(b) to one under Rule 56."  *Jones*, 601 F. Supp. 2d at 302 (D.D.C. 2009) (citation omitted).  A defendant "is not required to respond in the form of an answer before making a motion for summary judgment."  *Id.* (citing Fed. R. Civ. P. 56(b); *Hubicki v. ACF Indus., Inc.*, 484 F.2d 519, 522 (3d Cir. 1973); *Gifford v. Travelers Protective Ass'n of Am.*, 153 F.2d 209, 210–211 (9th Cir. 1946); 10A Wright, Miller, & Kane, *Fed. Prac. & Proc.* § 2718 (3d ed.)); *see also* 11 J. Moore *et al.*, *Moore's Federal Practice* § 56.60[1]-[2][a] (2011) ("Rule 56 does not limit how early a party may move for summary judgment. . . . No party has to wait for a responsive pleading before filing a summary judgment motion.").

[7] Because this filing appears to contain two separately-paginated documents, the Court will cite to specific pages using the automatically-generated ECF page numbers.

[8] This filing is styled as a "Sur-Reply," but in substance constitutes a reply in support of Jurdi's cross-motion.  The Court therefore considers it appropriately filed.

that certain allegations made in his complaint and repeated in his cross-motion's statement of material facts should be treated as admitted by the government because they were not properly contested or (2) alternatively, that certain responses be stricken from the government's statement of facts because the government did not admit or deny the corresponding allegations as required. Allegations Mot. at 1–3.  The government opposes, *see* Def.'s Opp'n to Allegations Mot. at 1, ECF No. 24, and Jurdi has not filed a reply.

### III.  LEGAL STANDARD

The Freedom of Information Act "sets forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society.'"  *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).  "[D]isclosure, not secrecy, is the dominant objective of the Act."  *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976).  FOIA accordingly "'mandates release of properly requested federal agency records, unless the materials fall squarely within one of nine statutory exemptions.'"  *Hunton & Williams LLP v. EPA*, 346 F. Supp. 3d 61, 72 (D.D.C. 2018) (citing *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011)).  And "even if some materials from the requested record are exempt from disclosure, any reasonably segregable information from those documents must be disclosed after redaction of the exempt information," unless the non-exempt portions are "inextricably intertwined with exempt portions."  *Id.* (internal quotation marks omitted) (quoting *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002)).

"FOIA cases typically and appropriately are decided on motions for summary judgment."  *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  An agency is entitled to summary judgment if no material facts are genuinely in dispute and the agency demonstrates

"that its search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 181 (D.D.C. 2017).  "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from disclosure,' while the 'burden upon the requester is merely to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Hardy v. ATF*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (brackets omitted) (quoting *Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)). To carry its burden, the agency must provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of the withheld document to which they apply." *Elec. Privacy Info. Ctr. v. DEA*, 192 F. Supp. 3d 92, 103 (D.D.C. 2016) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)).

In this case, the DEA is asserting a so-called categorical denial.  The Supreme Court and D.C. Circuit have "made it clear that rules exempting whole groups of records from disclosure are not only permitted, but should be encouraged as a means of enabling agencies to meet their formidable FOIA obligations in a timely fashion." *Graff v. FBI*, 822 F. Supp. 2d 23, 31 (D.D.C. 2011) (citing *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995)); *see also Schultz v. FBI*, 63 F. Supp. 3d 1183, 1189 (E.D. Cal. 2014) (noting that categorical exemptions "serve the interest of preservation of judicial economy by relieving the court of the obligation of carrying out a case-by-case examination of documents where the FOIA request seeks production of a narrow category of documents whose production would predictably

or inevitably result in an unwarranted invasion of the privacy interests of the third-party objects of the request"). Categorical exemptions must "'characteristically support an inference' that the statutory requirements for exemption are satisfied." *Nation Magazine*, 71 F.3d at 893 (quoting *United States v. Landano*, 508 U.S. 165, 177 (1993)).

Additionally, the FBI is asserting a so-called *Glomar* response—that is, it is refusing to either confirm or deny the existence of responsive records. Such a response is justified when merely confirming that responsive records exist "would itself 'cause harm cognizable under an FOIA exception.'" *Am. Civil Liberties Union v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) (quoting *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1178 (D.C. Cir. 2011)). Thus, for example, if an individual is the target of a FOIA request, an agency may issue a *Glomar* response "on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy." *Meserve v. U.S. Dep't of Justice*, No. 04-cv-1944, 2006 WL 2366427, at *6 (D.D.C. 2006). To justify a *Glomar* response, "[t]he agency must demonstrate that acknowledging the mere existence of responsive records would disclose exempt information." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). A plaintiff "can overcome a *Glomar* response by showing that the agency has already disclosed the fact of the existence (or nonexistence) of responsive records, since that is the purportedly exempt information that a *Glomar* response is designed to protect." *Am. Civil Liberties Union*, 710 F.3d at 427.

## IV.  ANALYSIS

### A.  Motions for Summary Judgment

The Court will analyze each agency's arguments in turn.

### 1. The DEA's Categorical Denial

The DEA's categorical denial of Jurdi's request relies on FOIA Exemptions 7(C)[9] and 7(D).  To invoke any subsection of Exemption 7, an agency must first establish that the records were gathered for law enforcement purposes.  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 756 (1989).  In assessing whether records are compiled for law enforcement purposes, the "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations and internal quotations omitted).  Here, the Court agrees with the DEA that Exemption 7's threshold requirement is met: any documents responsive to Mr. Jurdi's request— that is, any interview forms, files, or other investigative records relating to Mr. Grasso—would have been generated in the course of an investigation and therefore related to the DEA's law enforcement duties.  *See* Hertel Decl. ¶ 5 (indicating that the DEA is authorized to conduct criminal investigations into trafficking of controlled substances and that its corresponding investigative records are compiled for law enforcement purposes).

---

[9] The DEA also invokes Exemption 6.  Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," while Exemption 7(C) covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6)–(7). In cases like this one, "[w]hen information is claimed to be exempt from disclosure under both provisions, courts 'focus on . . . Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'" *Citizens for Responsibility & Ethics in Washington v. Dep't of Justice* (*CREW II*), 854 F.3d 675, 681 (D.C. Cir. 2017) (quoting *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice* (*CREW I*), 746 F.3d 1082, 1091 n.2 (D.C. Cir. 2014)).  Accordingly, the Court will focus on the applicability of Exemption 7(C).

Exemption 7(C) authorizes the government to withhold law enforcement records that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "The courts have construed this provision as permitting exemption if the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine*, 71 F.3d at 893 (citing *Reporters Comm.*, 489 U.S. at 776; *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). In evaluating an agency's use of Exemption 7(C), the court must first consider if there is a privacy interest implicated by the disclosure. 5 U.S.C. § 552(b)(7)(C); *see also Boyd v. Exec. Office for United States Attorneys*, 87 F. Supp. 3d 58, 72 (D.D.C. 2015) (citing *Reporters Comm.*, 489 U.S. at 756). Then the court must balance this privacy interest against the magnitude of the public interest served by disclosure asserted by the requestor. *Boyd*, 87 F. Supp. 3d at 72; *see also* 5 U.S.C. § 552(b)(7)(C).

To overcome the privacy interest of a third party, the information must "shed[] light on an agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 773. Information "that reveals little or nothing about an agency's own conduct," *id.*, will not overcome a third party's private interest, because "[t]he only relevant public interest that weighs into the calculus for purposes of Exemption 7(C) is 'the citizens' right to be informed about what their government is up to,'" *Boyd*, 87 F. Supp. 3d at 73 (quoting *Reporters Comm.*, 489 U.S. at 773). When asserting a public interest related to revealing government wrongdoing, the plaintiff must "establish more than a bare suspicion in order to obtain disclosure" and "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Ocasio v. U.S. Dep't of Justice*, 219 F. Supp. 3d 191, 195–96 (D.D.C. 2016), *aff'd*, 2017 WL 4217471 (D.C. Cir. Aug. 23, 2017) (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004)). If a plaintiff cannot make this showing and does

not identify any other public interest, withholdings under Exemption 7(C) are appropriate.  *See Boyd*, 87 F. Supp. 3d at 73–74.

To recall, Mr. Jurdi sought (1) "[a]ny DEA Form 6's created by any DEA Agents in relation to Anthony Grasso," (2) "[a]ny Other File Number of a DEA File containing the name of Anthony Grasso," and (3) "[a]ny other investigative reports filed by any other agent referencing the name Anthony Grasso."  Compl. Ex. 1 at 93.  DEA broadly denied the request and did not conduct a search for responsive documents.  The government justifies this on the grounds that any responsive document would be immune from disclosure.  According to the government, "[t]he simple presence of a person's name in records compiled for law enforcement purposes may trigger questions about his or her involvement in criminal activity or his or her role in an investigation or prosecution."  MSJ 11 (citing Hertel Decl. 4).  Additionally, the government suggests, "release of records from a criminal investigative file could link Anthony Grasso to specific events mentioned in the file and other individuals referenced, to a greater degree than exists on the public record" and "could subject Anthony Grasso to harassment or embarrassment, as well as to undue public attention."  *Id.* (citing Hertel Decl. 4).

At first glance, the government's assertion of a categorical denial appears somewhat ambitious, because Grasso publicly testified at Jurdi's trial and acknowledged his role as a cooperator.  Hertel Decl. ¶ 12.  Additionally, the DEA withdrew its original *Glomar* response and acknowledged that at least some relevant records exist.  *Id.*  At the very least, then, it seems like the government should be required to conduct a full search for responsive documents and offer document-specific objections or redactions based on particular privacy concerns.  On closer analysis, however, it becomes clear that, because Jurdi's request is tailored to files and reports referencing or related to Grasso, any responsive documents would necessarily introduce new

information about the circumstances of Grasso's involvement with law enforcement and work at least some marginal invasion into his still-extant privacy interests. *See Nation Magazine*, 71 F.3d at 893 (explaining that categorical exemptions must "'characteristically support an inference' that the statutory requirements for exemption are satisfied.") (citation omitted). After all, "[t]he fact that information about [Grasso] is a matter of public record simply makes [his] privacy interests 'fade,' not disappear altogether." *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 932 (D.C. Cir. 2014) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 655 F.3d 1, 9 (D.C. Cir. 2011)); *see also Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (concluding that "an individual does not waive privacy rights merely by testifying at a trial"); *Lewis-Bey v. U.S. Dep't of Justice*, 595 F. Supp. 2d 120, 135 (D.D.C. 2009) (reasoning that individuals involved in law enforcement investigations have a substantial interest in seeing that their participation remains secret, and "[s]uch privacy interests are no less significant where the individual has testified at trial") (citations omitted).[10]

Against these privacy interests, Jurdi has not identified any sufficient countervailing public interests favoring disclosure. He primarily argues that there is a public interest in "understanding the criminal justice system" through these documents and that they are needed to "operate as a curb on prosecutorial or judicial conduct[.]" Compl. at 5; *see also* MSJ at 6–7. But when a requestor advances revealing government misconduct as the relevant public interest, he or she must "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Favish*, 541 U.S. at 174. Specifically,

---

[10] Jurdi also suggests that Grasso effectively waived his privacy interests by failing to file a request to redact the trial transcript. *See* XMSJ at 7 (suggesting that "Grasso was put on notice of his right to privacy" but nonetheless "failed to file a 'Notice for Redaction of Transcript.'"). However, Jurdi does not cite, and the Court is not aware of, any authority indicating that a third-party's privacy interests under Exemption 7(C) are waived or forfeited by such a failure.

the requestor must provide "compelling evidence that the agency is engaged in illegal activity."
*SafeCard Services, Inc.*, 926 F.2d at 1205–06.  This Jurdi has failed to do.  He takes issue with
the kind of law enforcement tactics used to secure Grasso's testimony against him, but never
suggests that they were illegal.  XMSJ at 8–10.  At most, he suggests that there is a "legitimate
need for the records," given that "[t]he documents and records on file with the [agencies] will
prove that Mr. Grasso lied to the District Court and to Mr. Jurdi's Jury."  Compl. at 5; *see also*
Pl.'s Reply in Supp. of XMSJ at 4 (suggesting that "the prosecution in Mr. Jurdi's federal
criminal case . . . solicited a lie from its own witness [Grasso]").  But "[u]nsubstantiated
assertions of government wrongdoing . . . do not establish a 'meaningful evidentiary showing,'"
even when they concern "lies by the prosecutor."  *Boyd v. U.S. Dep't of Justice*, 475 F.3d 381,
388 (D.C. Cir. 2007) (quoting *Favish*, 541 U.S. at 175).  More generally, "the courts have
consistently refused to recognize any public interest in disclosure of information [under FOIA] to
assist a convict in challenging his conviction."  *Burke v. U.S. Dep't of Justice*, 1999 WL
1032814, *4 (D.D.C. Sept. 30, 1999); *see also Taylor v. U.S. Dep't of Justice*, 257 F. Supp. 2d
101, 110 (D.D.C. 2003) (suggesting that disclosure of potentially exculpatory *Brady* information
is in a plaintiff's private interest, not the general public interest).  While this is not a categorical
rule, *see Roth*, 642 F.3d at 1184 (recognizing a countervailing public interest under Exemption
7(C) "in the circumstances of this case, where the FOIA requester has surmounted the fairly
substantial hurdle of showing that a reasonable person could believe that the FBI might be
withholding information that could corroborate a death-row inmate's claim of innocence"),
without any clearly articulated public interest in disclosure or meaningful evidence of
government wrongdoing, there is no basis to invade a third-party's privacy interests here.  *See
Martin v. U.S. Dep't of Justice*, 488 F.3d 446, 457 (D.C. Cir. 2007) ("[P]rivacy interests are

particularly difficult to overcome when law enforcement information regarding third parties is implicated.") (citing *Reporters Comm.*, 489 U.S. at 780).

In certain aspects, this case resembles *Black v. U.S. Dep't of Justice*, where the FOIA plaintiff sought, among other things, all "criminal files" referencing a particular individual whose identity was public and whose testimony was used to help convict the plaintiff of narcotics distribution. 69 F. Supp. 3d 26, 31, 37 (D.D.C. 2014), *aff'd*, 2015 WL 6128830 (D.C. Cir. Oct. 6, 2015). The agency declined to conduct a search and issued a categorical denial, reasoning that any responsive information would be exempt from disclosure pursuant to Exemption 7(C). *Id.* at 31. Defendants argued that any disclosure would result "in the unwarranted invasion of [the individual's] privacy" and that "because [the individual's] testimony was used in convicting Plaintiff of narcotics distribution, and because narcotics distribution is a serious crime often involving violence, disclosure of the requested records could result in significant harm to [the individual]." *Id.* at 37. Based on these arguments, the court concluded that "Defendants have established a compelling privacy interest." *Id.*[11] It then rejected as insubstantial the plaintiff's argument that "the requested records are relevant to the public's interest in understanding government operations and discovering prosecutorial misconduct." *Id.* at 38. Accordingly, the government's categorical denial (and refusal to conduct a search) was upheld. *See id.* at 40 ("All

---

[11] In conducting the analysis, the court in *Black* sought and received additional confirmation that the individual at issue was, in fact, still alive. 69 F. Supp. 3d at 37 ("Since death can diminish one's privacy interest, the Court requested that Defendants provide proof of [the individual's] life status."). Here, while it is not explicit, the DEA's declaration implies that Grasso is still alive. Hertel Decl. ¶ 15 (suggesting disclosure could subject Anthony Grasso to harassment or embarrassment). Additionally, some modest amount of privacy interest would persist even after death, and Jurdi has not pointed to any cognizable public interests that would overcome even that diminished interest. *See Davis*, 968 F.2d at 1282 ("[E]ven if a particular privacy interest is minor, nondisclosure remains justified where, as here, the public interest in disclosure is virtually nonexistent.").

of the records Plaintiff requested only contained information implicating third parties in law enforcement investigations and were thus exempt from disclosure under Exemption 7(C). . . . Since Defendants provided a declaration explaining in detail why the records Plaintiff requested are categorically exempt from disclosure pursuant to Exemption 7(C), the Court is satisfied that Defendants met their burden under FOIA.").

In his opposition and cross-motion for summary judgment, Mr. Jurdi invokes the "official-acknowledgement doctrine," which "provides that 'when an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information.'" *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 285 (D.D.C. 2016) (quoting *Am. Civil Liberties Union*, 710 F.3d at 426). Jurdi argues that the DEA has waived its ability to exempt DEA investigative reports and files that mention Mr. Grasso because the DEA officially acknowledged Mr. Grasso as an informant through DEA Agent Hertel's declaration submitted as a part of the government's motion for summary judgment, *see* Hertel Decl., and during Mr. Grasso's testimony in open court, Pl.'s XMSJ 2–3. In some ways, this is another argument that Grasso's privacy interest in the requested records is severely diminished. *See* XMSJ at 5 (arguing that the DEA "official[ly] acknowledged [that] Mr. Grasso was involved with several individuals who trafficked in drugs and engaged in other violent and illegal activities" and that although the "DEA asserts . . . a 7(c) exception because release of those files would reveal the identities of individuals who are subjects, witnesses, or informants. . . . The Government has already publicly disclosed that information.").

However, even assuming the DEA officially acknowledged Grasso's role as an informant, Jurdi must show more: under the "officially acknowledged" exception, the requestor

"has the burden of showing that there is a permanent public record of the exact portions he wishes." *Davis*, 968 F.2d at 1280.  Thus, for example, a requestor is entitled under FOIA only to the specific portions of wiretap recordings that were publicly played at a trial.  *See Cottone v. Reno*, 193 F.3d 550, 555 (D.C. Cir. 1999) (concluding requestor "has discharged his burden of production by pointing to specific tapes which, having been played in open court and received into evidence, reside in the public domain and mirror precisely the information that he has requested").  Jurdi fails to make the analogous showing here.  Again, Jurdi specifically requested (1) any DEA Form 6 relating to Anthony Grasso; (2) any other file number of a DEA file containing the same name; and (3) any investigative reports filed by any agent referencing the name.  Compl. Ex. 1 at 96.  And because the government has not "officially acknowledged" or disclosed any of these exact records that Jurdi has requested, his argument must be rejected.  *See Black*, 69 F. Supp. 3d at 35 (rejecting argument based on previous prior disclosure when "[p]laintiff ultimately fail[ed] to point to specific information identical to that being withheld that has been placed in the permanent public record").[12]

### 2. FBI's *Glomar* Response

In contrast to the DEA, the FBI has maintained its original *Glomar* response and justifies it under Exemptions 7(C),[13] 7(D), and 7(E).  Under Exemption 7(C), the FBI argues that a *Glomar* response is appropriate "because members of the public are likely to draw adverse

---

[12] Because the Court concludes that the DEA's response was justified under Exemption 7(C), it does not also consider whether it was further justified by Exemption 7(D).

[13] Like the DEA, the FBI invokes Exception 6 along with Exemption 7(C).  But as explained above, in cases like this one, "[w]hen information is claimed to be exempt from disclosure under both provisions, courts 'focus on . . . Exemption 7(C) because it provides broader privacy protection than Exemption 6 and thus establishes a lower bar for withholding material.'"  *CREW II*, 854 F.3d at 681 (quoting *CREW I*, 746 F.3d at 1091 n.2).

inferences from the mere fact that an individual is mentioned in the files of a criminal law enforcement agency such as the FBI, and cast them in an unfavorable or negative light."  MSJ at 9.  The government further argues that even if an individual testified on the record, any FOIA response other than a *Glomar* response would constitute "an official acknowledgment of association with an investigation" and would "likely [] lift the association out of practical obscurity."  *Id.* (citing Def.'s Mot. for Summ. J. Ex. A ("Hardy Decl.") ¶ 17, ECF No. 13-3). The FBI's supporting declaration indicates that there is no countervailing public interest, because Plaintiff failed to substantiate how the records he seeks would inform the public about the operations of the FBI or trigger a significant public interest concern about misconduct.  Hardy Decl. ¶ 19.  The FBI concedes that "if certain information about the third party has already been acknowledged, the FBI would typically remove the *Glomar* (b)(6) and (b)(7)(C) protection and acknowledge existence of files."  *Id.* ¶ 21.  But here, the FBI maintains, there was no such acknowledgment: "The FBI closely scrutinized the court testimony Plaintiff provided, but there is no indication that the FBI was involved in the referenced criminal  case.  Thus, despite Plaintiff's purported claims, Plaintiff did not provide any evidence that the FBI and Mr. Grasso have had any kind of interaction or relationship."  *Id.*

The Court agrees that the FBI has justified its invocation of *Glomar*.  The FBI's declaration plausibly indicates that responsive records, if they were to exist, would have been compiled for law enforcement purposes, thus meeting Exemption 7's threshold requirement.  *See* Hardy Decl. ¶ 13 (affirming that any responsive records "would fall squarely within the law enforcement duties of the FBI").  Jurdi does not contest this point.  Additionally, at least in the absence of a countervailing public interest, the FBI's refusal to confirm or deny the existence of records is justified. *See Roth*, 642 F.3d at 1178 ("Since merely acknowledging that the FBI has

16

information regarding [various third parties] would tend to associate them with criminal activity, thus impinging on their privacy, the FBI's *Glomar* response, absent a countervailing public interest in disclosure, was appropriate under Exemption 7(C)."); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 415 F. Supp. 3d 71, 76 (D.D.C. 2019)  (noting that "[l]aw-enforcement agencies like the FBI . . . routinely issue such [*Glomar*] responses 'when responding to targeted requests for documents regarding alleged government informants, trial witnesses, subjects of investigations, or individuals who may merely be mentioned in a law enforcement record'") (quoting U.S. Department of Justice, *Guide to the Freedom of Information Act* 32–33 (2009 ed.)).  And finally, for the reasons explained above, Jurdi has not identified a cognizable public interest or provided any evidence of government impropriety under *Favish*.  Of course, Grasso's publicly-acknowledged role as a government cooperator does admittedly reduce his privacy interest in not being associated with criminal activity.  But any official acknowledgement that Grasso also had a relationship with the FBI would reveal additional information about the extent of his cooperation with the government and inflict at least some further invasion on his privacy. Situations where the agency has officially confirmed the third-party's status as an informant are distinguishable, because here, there is no evidence of any official confirmation by the FBI specifically.  *See Boyd*, 475 F.3d at 388–89 (suggesting that a *Glomar* response is "unavailable" to an agency only "[w]here an informant's status has been officially confirmed") (citing *Benavides v. DEA*, 968 F.2d 1243, 1246 (D.C. Cir. 1992)).  Accordingly, in the absence of any cognizable public interest, the FBI's *Glomar* response is justified under Exemption 7(C).[14]

---

[14] Again, because the Court concludes that the FBI's *Glomar* response was justified under Exemption 7(C), the Court does not also consider whether it is further justified under Exemptions 7(D) and 7(E).  *See* MSJ at 12–13, 14–17.

### B.  Plaintiff's Motion to Treat Allegations as Admitted and/or to Strike

After the government filed its reply in support of its motion for summary judgment and

its opposition to Jurdi's cross-motion, Jurdi filed a "Motion to Treat his Allegations as Admitted

and/or To Strike Defendant's Responses to Plaintiff's Statement of Undisputed Facts."

Allegations Mot. at 1.  The motion argues that (1) the government failed to deny certain

allegations in the complaint, thereby rendering them admitted under Federal Rule of Civil

Procedure 8(b), and (2) the government failed to adequately contest certain facts set forth in

Jurdi's statement of undisputed material facts that accompanied his cross-motion for summary

judgment and, as a result, the government's responses to those facts must be stricken.  *Id.* at 1–2.

Courts in this District have rejected Jurdi's first argument, reasoning that a defendant

may file a pre-answer motion for summary judgment without automatically admitting as true all

the allegations in the complaint.  *See Jones v. U.S. Dep't of Justice*, 601 F. Supp. 2d 297, 302

(D.D.C. 2009); *Parker v. U.S. Dep't of Justice*, 214 F. Supp. 3d 79, 85 (D.D.C. 2016); *see also*

10A Wright, Miller, & Kane, *Fed. Prac. & Proc.* § 2718 (4th ed.) ("A defending party is not

required by the rule to file an answer before moving for summary judgment.").  As *Jones*

explained, "it is standard practice in FOIA cases for the defendant to file a motion for summary

judgment instead of filing a responsive pleading."  601 F. Supp. 2d at 302.  "Such a practice is

substantively no different than filing a motion under Rule 12(b)(6) accompanied by matters

outside the pleadings, which is then converted by operation of Rule 12(b) to one under Rule 56."

*Id.*  In other words, the government's motion here is the functional equivalent of a pre-answer

motion to dismiss, which temporarily relieves it of the obligation to file an answer that "admit[s]

or den[ies] the allegations asserted against it."  Fed. R. Civ. P. 8(b)(1)(B); *see also Parker*, 214

F. Supp. 3d at 85 (rejecting plaintiff's argument that, because defendant filed a motion for

summary judgment instead of an answer, defendant was therefore "deemed to have admitted all matters alleged" in the complaint); 10A Wright, Miller, & Kane, *Fed. Prac. & Proc.* § 2718 (4th ed.) (reasoning that "a summary-judgment motion made prior to an answer should have the benefit of the Rule 12(a) language tolling the period of time in which an answer must be filed").

Jurdi's second argument is a closer question.  He specifically challenges the government's responses to Statements 6, 7, 12, 14, and 22 of his Statement of Undisputed Material Facts, *see* Pl.'s SUMF, ECF 17-1, in which the government claimed a lack of knowledge or information, *see* Resp. to Pl.'s SUMF, ECF No. 20-1.  According to Jurdi, the truth or falsity of these five facts was either known by the government or could have easily been ascertained by it.  *See* Allegations Mot. at 3 (suggesting that the government "could have easily availed itself of the knowledge or the information it needed in order to admit or deny [the paragraphs] by accessing the information in its files at the Dep't of Justice Executive Office, the U.S. District Courts, the FBI, the DEA, and the U.S. Attorney's Office").  The Court agrees that, taken on their own terms, some of the government's denials appear somewhat *pro forma*.  For example, Jurdi's Statement 12 asserts that the government entered into plea agreements with various individuals in exchange for their testimony at Jurdi's trial, Pl.'s SUMF at 12; the government's response acknowledges that there was a plea agreement with Grasso, but indicates it "lacks knowledge or information about the rest of this statement," which seems implausible, as the government would likely have knowledge of other plea agreements.  Resp. to Pl.'s SUMF at 2.  However, any arguable deficiencies in the government's response are excusable, because Jurdi's statement of facts did not contain any citations to the record, as required by Local Civil Rule 7(h).  As such, Jurdi's statement of facts placed an unreasonable burden on the government, requiring it to contest facts of unknown provenance.  *See Hawkins v. District of Columbia*, No.

17-cv-1982, 2020 WL 601886, at *3 (D.D.C. Feb. 7, 2020) ("The obligations of summary judgment 'cannot be met by mere allegation or denial, but instead, require a showing by affirmative evidence.'") (quoting *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)).[15]  More fundamentally, as the government argues, none of the facts asserted in the statements at issue appear to be material, insofar as their admission by the government would not change the Court's analysis of the cross-motions for summary judgment.  *See* Def.'s Opp'n to Allegations Mot. at 2.  That is, even if admitted as true, they do not indicate that there is a countervailing public interest in the documents requested or that either the FBI or the DEA officially acknowledged the documents at issue.[16]  For these reasons, the Court will deny Jurdi's motion.  *See Wilkins v. D.C.*, No. 17-cv-884, 2019 WL 3767164, at *2 (D.D.C. Aug. 9, 2019) (noting that a statement of undisputed material facts fails to comply with the local rules when "the facts are not material" or "references to the record are lacking").

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**, Plaintiff's Cross-Motion for Summary Judgment is **DENIED**, and Plaintiff's Motion to Treat

---

[15] It is possible that Jurdi assumed that he was not required to include citations to the record, given his belief that the government had admitted as true all of the allegations in the complaint.  In other words, both parts of his argument are linked.  *See* Allegations Mot. at 3 ("Each of the Statements in the Undisputed Material Facts averred by Mr. Jurdi are allegations alleged in the civil complaint.  The allegations in the civil complaint are supported by documentary evidence.").  But even if the Court overlooks the requirement that a statement of facts include specific citations to the record and assumes the facts were admitted, they are still not material, as discussed below.

[16] The statements at issue—Statements 6, 7, 12, 14, and 22—concern whether Grasso filed a transcript redaction request, whether certain private information about Grasso was already in the public domain as the result of the failure to request a transcript redaction, whether the government entered into plea agreements with other of Jurdi's alleged co-conspirators, whether the transcript of Jurdi's trial included in the complaint is authentic, and whether Grasso took any "action, whatsoever, to protect his [privacy] rights."  Pl.'s SUMF at 3–4.  As discussed, none of these facts bear on the analysis under Exemption 7(C).

Allegations as Admitted is **DENIED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 2, 2020                                    RUDOLPH CONTRERAS
                                                            United States District Judge